Okay, this is the case of Direct Energy versus the City of Harvey, 1-20-0629. Our procedure is as follows. First of all, you've got the first division, first district, second division, which today consists of Aurelia Puchinski, Cynthia Cobb, and myself, Justice Smith. We will follow the procedure which we've been using since Zooming, that is, one, we let the appellant present their case uninterrupted, and then we will ask questions. Then the appellee will make his or her presentation, and then we will ask questions. Then the appellant will have their final opportunity to close. With that in mind, you may proceed. Thank you. I'd like to reserve five minutes for rebuttal, please. May it please the court, Kerri-Lynn Kraftheffer with Ansel Glenk on behalf of the City of Harvey. So, I'd like to start this morning by talking about what this case is about and what it's not about, because the issue in this case is actually very narrow. This case is about determining who has the ability to enter into a contract for a municipality. And to pinpoint it a little further in this case, the issue is whether a city employee can bind a city to a contract that the city council knows nothing about. This case is not about whether or not the City of Harvey owes direct energy a reasonable amount of money or electricity provided to the city. The city does not dispute that it does. However, the contract formation issue here is critical because the contract contains provisions that require the city to pay 18% interest annually to pay prevailing party attorney's fees. And just to put some context to those provisions, the original complaint sought $644,000 for electricity provided to the city. However, the trial court awarded not only that amount, but also $400,000 in interest and $153,000 in attorney's fees. Now, if we can get past some of the distractions in this case, it's actually easily resolved by the application of well-established Illinois municipal law and contract law. The law in Illinois is that municipalities can enter into contracts in basically two ways. One is that the city council can vote to approve a contract. So the contract would have to be approved by the corporate authorities of a municipality. Under the Illinois Municipal Code, corporate authority is defined as the mayor and the city council. The second way for a city council to enter into a contract would be for the city council to vote to delegate that authority to somebody else. Now, the record in this case shows that neither of those things happened. There's no evidence in the record that the city council took any action on this contract whatsoever. There are no minutes of the city council meeting. The contract isn't signed by the mayor. It's not attested to by the city clerk. There's absolutely nothing in the record showing that the city council voted on this contract or that they even knew about the contract. Second, there's nothing in the record indicating that the city council authorized its employees, such as Rufus Fisher, the former director of public works who signed this contract, to enter into contracts for the city. So, the two possible paths for a municipality to engage in a contract are not present in this instance. Instead, Direct Energy is urging this court to find that a third pathway occurs, and that is they would like the court to find that as long as any governmental employee signs a contract, they can bind a city to that contract, even if the city council doesn't know about it, and they can also therefore cancel any prior existing contract that was actually approved at an open meeting by the city council. Now, this court should decline to create new law in this matter for several reasons. First of all, Direct Energy is saying that Rufus Fisher, who is the former public works director, signed the contract and switched from ComEd to Direct Energy. They contend that his signature on the document is sufficient enough to bind the city to a contract. Now, it's true that municipalities at times can bind a municipality to a contract, but that's first of all only where the municipality has authorized that. So, for example, a city could pass an ordinance saying that we're going to have a purchasing department, they have the ability to enter into contracts for us. Or another type of municipal legislation that's very common is where a municipality might say, our city administrator has the ability to bind us to contracts up to $5,000, something like that, but that itself requires a legislative act and knowledge by a municipality. However, that didn't occur here, and Direct Energy isn't even alleging that it did. Now also, this is not a case where a contract went to a vote before the city, but then instead of the city being, the contract being signed by the mayor, Rufus Fisher signed it, that's not the situation either. And it's also not a situation where the city routinely relied on department heads to just execute its own contract, where the city is now trying to get off on a technicality. It's nothing like that. The common procedure in the city of Harvey was always for the city council to approve the contracts. There's no evidence here that that was not, that that occurred here. So Direct Energy is simply saying it's a valid contract because the employee signed it and they believe that's enough. Now, kind of the second prong, well, first of all, back on that, the record in this case in the deposition transcript for Mr. Fisher shows that even Mr. Fisher himself did not believe he had the authority to bind the city to contracts. So after the contract was signed by Mr. Fisher, Direct Energy started sending invoices to the comptroller. The comptroller paid the invoices for four to five months until he realized there was not a valid contract. And after that, the city reverted back to ComEd. That brings us to Direct Energy's second argument here, which is that the comptroller's actions in paying those invoices for four to five months somehow ratified this contract that had never been approved. Those actions made that form the contract. Again, that's not a recognized way to bind a municipality to a contract. And as soon as the comptroller realized there wasn't a valid underlining contract, he reverted back to ComEd. Now, Direct Energy contends that there's one sentence in the city code which gives the, which engages in this delegation of power. And that is section 2-16-030, subsection B of the city code, which is set forth on page 11 of our brief. That says that, quote, the comptroller shall have charge of all contracts, judgment orders, notes, and evidence of indebtedness belonging to the city, except such as are directed by law or ordinance to be deposited elsewhere. So, Direct Energy claims that that one sentence doesn't just mean that the comptroller has the charge of the contracts and administers them, but that actually gives them the power to engage in contracts and undo previous contracts of the city council. Now, that's not what it actually says. There was no testimony or evidence at all in this case regarding any member of the city council. The mayor didn't testify to the legislative intent. There's nothing in the record about what the legislative intention was or that the intention of the city council was to have a broad expansion of what having charge of the contracts means and that instead of just keeping control of them, that actually conveyed the contracting power. Now, I believe it would be very dangerous for the court also to adopt Direct Energy's arguments for public policy reasons. First of all, it would completely turn Illinois municipal contract law on its head. If someone who wants to enter into a contract with the municipality merely has to convince some employee to sign a contract and that's finding the city council doesn't have to know about it, that would be a terrible public policy. There are other problems with that because, for example, if that's the law, the city's legal department review the contract. And in here, just to point out one thing, for example, there's a provision in the contract that requires the city to pay tax on the contract. Well, Illinois municipal corporations are tax exempt. That is something that would routinely be taken out of the contract by a city attorney. If a city attorney had the ability to do that, why would a tax exempt entity like the city of Harvey pay tax on something? But if an employee can enter into a contract without review of the legal department, those are the kind of problems that come into play. Also, the city council didn't have the ability to deliberate transparently on this contract. Illinois is under a clamor for open and transparent governments. And this would, people could, city employees can then give contracts to their friends. And if the city doesn't know about it, it's fine. So, this just also poses significant public policy problems, the argument that direct energy is making. In addition, direct energy argues that the city knew it changed electrical providers because they accepted the electrical service. But there's no way that the city council, when they walk in the city council chambers and there's lighting and they know that they voted for ComEd to provide electricity, there's no way that they would know by walking into city hall and seeing that the lights are on that that meant that there was a change in providers. That's a logical fallacy. The fact that the city knew they were receiving electricity does not demonstrate that the city council knew that it was not being provided by ComEd, who they thought they had contracted with. And then finally, I would like to deal with some of the distracting arguments that direct energy raised. First of all, they claim the city was required to allege affirmatively that Rufus Fisher did not have authority to bind the city to a contract and that we were required to allege that as an affirmative defense. To the contrary, that's not an affirmative defense. This is not a situation where the city of Harvey is saying, yes, you know what, there was a contract, but there's an affirmative matter defeating that claim, such as the statute of limitations or statute of fraud. It's actually just a straight out defense to the case. We denied from the beginning in our answer, we denied that there was a valid contract. They have the burden of proving that there was a valid contract here. So we did not have to allege as an affirmative matter that the contract was not valid. We denied that it was valid to start out with. And the second argument that they've raised, that we're raising this argument for the first time on appeal, which is rather perplexing because the city has been very consistent all along in what our position is here. And the first argument raised in our motion for summary judgment was about this lack of  On page two of our response to the motion for summary judgment, we state, quote, it is clear that the plaintiff's not entitled to summary judgment on the breach of contract claim where the person purportedly signing the contract was merely a public works director or superintendent. Where a party lacks the authority to form a contract, the resulting contract is void of an issue. And then we cite case law and we make the whole argument that it's the corporate authorities of the municipality that can bind the municipality, not an employee. So for these reasons, the trial court was wrong. The trial court's decision should be reversed. This matter should be remanded back to the trial court to determine the reasonable amount of money that the city owes for electrical service, not these other things that only were imposed on the city by virtue of this invalid contract. Question? Sure. Is there, I'm sorry, Justice Patinsky, I'll defer to you. Thanks. Ms. Kraftheffer, is there anything in the record that supports the conclusion that the city disputed that Fisher actually signed the contract? I believe he's saying he didn't sign it, but the city's position is that he did. He just didn't have authority. Yes, that's correct. I think there was some kind of confusing testimony in his deposition transcript where he didn't recognize the signature and he didn't recall signing it, but we believe that he did sign it, but that he was not authorized to. Understood. And then there are no particular statutory provisions that are relevant in this matter with respect to how the city might award contracts. Well, so under the municipal code, under the general provisions, and I'm happy to look those up while counsel is making his argument to give you the specific sites, the corporate authorities of a home rule municipality, the city of Harvey is a home rule municipality, and the municipal code does give cities the ability to engage in contracts. So there's no statute that says how a city engages in contract, but there's well-established common law about what the procedure is for a municipality to engage in a contract. I am aware of that. I was really, really just hearkening back to a more recent Supreme Court opinion in which they indicate it's restored construction company, in which the court indicates that a city might be held to a quantum merit argument or provision if in fact there was statutory provisions that the city failed to honor or regard in the award of contracts. So I was looking for something more specifically or something closer to what the court in restore was talking about. So actually, as far as quantum merit, that's a little tricky on this appeal because we're not actually disputing that the city of Harvey owes money under quantum merit to direct energy. We believe that we raised that issue in our brief because you obviously can uphold on any grounds, but we believe that then we would have to go back before the trial court to determine the amount owed here because the trial court just umbrellaed in everything under the contractual theory as far as what direct energy was owed. So the city of Harvey agrees that it owes money. And it's also just a little procedurally sticky because in the middle of the contract dispute with direct energy, direct energy did also legitimately purchase ComEd's debt. So the city does agree that it owes for that. It's just we don't believe we owe interest, attorney's fees. We don't believe we should have been paying the taxes that were included in that. So that should go back down for a trial court determination. But so we're not necessarily disputing ultimately relief under quantum merit. We're just saying that before this court, it's not there. There's factual issues that would need to be determined for us. Thank you. ComEd, how did ComEd no longer service you? I mean, what was the steps that led to them not servicing and direct energy picking it up? Like, it's very strange that that didn't come before the city council at all. No, nothing regarding this. I'm not proficient enough to know how electrical companies switch. I mean, I know like when I switch my cell phone provider automatically one day, whatever day the service is going to change over, it just usually does if I've signed a contract. But I'm not like as far as the infrastructure, I don't know like how that happened, if they just assumed the same lines. But no, nothing came before the city council for the city to know about this. So, and in fact, nowhere did the city council ever be informed of the change? No, not until actually this lawsuit occurred. Was the city council aware of it? So in that case, there appears to be a lack of any intent by the city council or the city as a whole. And it's very unusual. In the municipal code, you did not, you say it's common law. But there are sections that indicate that municipality has to follow strict rules dealing with contracts. And here I find it very strange, especially if there's no evidence of intent by the city that a judge would rule that the city is obligated other than some basic amount. And I also realize that Harvey's gone through a lot of questionable things. I don't even want to ask if this guy Rufus is still employed there because it sounds like you've got a total change in government going from bad to good. So that's also a factor in this decision. I don't know if any of that was brought out at trial. But the other question I have is, I don't see anywhere in the record any appearance of the city council ever delegating any authority to anybody. Yes, Your Honor, thanks. You've raised a number of issues. First of all, thank you for acknowledging the city of Harvey is fighting the stigma of the past ghosts of City Hall. We have a reform mayor who's trying to clean things up there and we, you know, we keep inheriting a lot of the past baggage of the city. But, you know, it may have been that the things were a little wild and loose in the past in in Harvey, but there is nothing in this record that we can find any minutes of the city council that anybody knew anything about that. And we also don't believe it's our ability that is our burden to bring that forward. We believe that would have been direct energy's ability to prove that if they prove the existence of a contract that it was there. Now, what the trial court judge was thinking, you know, it's easy to look at the mess that was Harvey and to look at the fact that there are funds out here and just kind of throw your hands up in the air and say, well, you know, obviously they owe money and they didn't, you know, it was haphazard. So that's, that's where we're at. But we're trying to, we're trying to move forward in some kind of cohesive fashion where we're actually following applicable laws and the city of Harvey's happy to pay any legitimate debt. I mean, we have to fight for every dime and nickel with the city here because as the court probably knows, Harvey has the highest amount of unpaid property taxes, the highest delinquency of any city in Cook County, but there's no knowledge by the city council here. And this can't be what the law is in Illinois because if this is what the lies were, we're opening up a whole can of worms, not only for the city of Harvey, but for other municipalities when these procedures aren't followed. Any more questions. Okay, Nick, you may proceed. May it please the court, and thank you justices for having me this morning, Nick Lawson on behalf of direct energy. Harvey's arguments boil down to the same basic request for relief. And that's that the contract be considered void. The debate is that is whether Mr. Fisher had authority to sign the contract, or at least that's the debate that Harvey would like to have. But that is not a question in this case. If Harvey is going to allege that the contract is void. It had to do that in an affirmative defense. It had to. That's Illinois statute 735-52613. Any argument. It's still your burden to show a contract. Sure, Your Honor, I'll get to that point. Sure. I'm just disposing of the authority concern right now. But the Illinois Civil Procedure requires that be raised as affirmative defense, and it's undisputed that it never was. I'll turn to the acceptance argument now, Your Honor. As this court knows, acceptance can be proven by performance. Performance is a substitute. And there's no dispute that direct energy provided the power or that the city used the power. So acceptance is not credibly in dispute. But even if the court were concerned about acceptance, that acceptance was in dispute or there was a dispute of fact, Harvey clearly ratified the contract. Now, remember, a municipality, it can't ratify a contract if it's void. Right. We recognize that. But this contract can't be void because that can't be an issue in the case. It was never raised in affirmative defense. So this contract can be ratified. And that comes down to whoever had knowledge of it. Right. We know that if you ratify a contract, the principal must have knowledge of its terms and accept the benefits. The person that had knowledge of its terms here was Harvey's comptroller. OK, I mean, if we look at Harvey Ordinance 21620, that says the comptroller is the head of finance and he's in charge of all things thereto. And in 21630, as my as my friend for the city of Harvey brought up, it says what thereto means. OK, the comptroller is in charge of all contracts and dot dot dot evidences of indebtedness thereto. So the comptroller's job for the city of Harvey is to know the contracts. And there's no debate that the comptroller received Harvey's direct energies contract because he asked for it and it was provided to him. And there's no debate that he had evidence of the indebtedness because he collected the invoices and he asked for them when he was missing some. So he had all all of the knowledge of the contract and its terms. And it's his job to have knowledge of the contract and its terms. And because it's his job, his knowledge is the city's knowledge. So the city knows about the contract. The city knows what it owes. And it accepted the benefit of the contract by continuing to receive the power. The comptroller never called direct and said, stop, stop sending his power. It never happened. Your Honor, I'll reserve the remainder of my time to answer questions. You know, go ahead, Cynthia. Since when has it become the law and the municipal law that the city should be imputed knowledge that some employee or an independent contractor may have entered into a contract that wasn't authorized? Wasn't that direct energy's responsibility to make certain that you had a contract or does direct energy not deal with municipalities? It's your first municipality. No, Your Honor. Direct energy does deal with municipalities. And that is a fair question. Where does the authority to enter into a contract yield from? Sure. That's a very fair question, Justice. The question in this case, direct energy is not debating that entering into the contract was with the wrong person. There is no evidence that Mr. Fisher after the fact, there's no evidence that he had authority. The question from direct energy's perspective at this point is, was the contract ratified? Well, that's a good question because I can't see again, going back to my background in municipal law, how any contract can be enforced when it's your burden to show that the city council or the delegation of authority existed. And I have seen nothing, even though you speak about language in their evidently ordinances, that still has to be ratified by the city council or delegated in form of a written statement in a history of doing it that way. And it doesn't appear that there is any of that here. Your Honor, that's true. I disagree with the basic premise, though. The ordinances that I cited to you expressly provide what the comptroller, whether he's an independent contractor or not. In fact, I'm not sure that was ever brought into evidence at any point. But the comptroller is a specific position for the city of Harvey is in Harvey's ordinances. He is the person charged with knowledge of contracts and evidences of indebtedness. So his knowledge on those facts is the city. That's why the contract can be ratified. Does Harvey have a city manager. I don't know your honor hasn't been a part of the case. No, it's just usually if there's a city manager a comptroller has no authority. So I, you know, I guess if I was arguing this and then was a manager, I'd be attacking what you're alleging, but it appears that was not addressed in the circuit court. But I still do not see how you can convey your burden to show that the city council in any form ratified this action in under municipal law, I do not see how you can say it's a valid contract unless it was ratified by the city council. Well, your honor I can only point to Harvey city ordinances to tell you that the comptroller is in charge of that information. But I'll bring it back to my initial point which is all of these arguments that are being made right now all boil down to whether or not the contract is boy. I mean that's the basic premise, the wrong person signed for the municipality is boy. But that is not in cannot be at issue in this case. Any argument that a contract is boy, must, must be raised by an affirmative defense in a general denial is not enough. You have to put forward your facts just like any other cause of action of why the contract is boy, and there is no debate that that never occurred. Well, I disagree with you again. I do not see this as an affirmative defense, and it doesn't appear, it appears that you're that I mean, smart move to try and make an affirmative defense when in fact it's merely a fact issue, and not an affirmative defense, but I'll let it go with that and I guess we should move on. Carrie you may proceed. Thank you. So I in the meantime did just look at the municipal code to find the contracting authority provision. I believe the closest one. It's section 3.1 dash 40 dash 40 of the municipal code so that's 65 ILCS. And that says vote required the passage of all ordinances for whatever purpose, and for any resolution or motion. One to create any liability against the city or two for the expenditure or appropriation of its money shall require the concurrence of a majority of all members, then holding office on the city council including the mayor, unless otherwise expressly provided by this code or any other act governing the passage of the ordinance resolution or motion. So I mean that's the way that a municipal authority acts through its corporate authorities. But other than that. No, I'm just I'll just stand by original ordinances, the city does have a city administrator, it's not a managerial form of government. It's a regular city city council form of government. But that that really wasn't a matter in the case because all along we believe that Mr. Fisher lack the capacity. And then finally there was just something about was it in the record or not about the comptroller being an independent contractor and yes that actually is in Mr. Williams deposition testimony that's in the record. Unless there's other questions, I would stand on the previous arguments. All right, thank you both were very especially interesting to me, having been a municipal attorney for three different municipalities so I, I guess, Carrie I say to you, there's a lot of things you ought to remove from the ordinance book. But anyway, thank you both very much. It was very well presented. Thank you justices. Thank you know as soon as we figure out what we're doing. Okay, thank you.